Filed 6/30/26  P. v. Vences CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

THE PEOPLE,

     Plaintiff and Respondent,

v.

BRYAN CALDERON VENCES,

     Defendant and Appellant.

A173404

(San Mateo County
Super. Ct. No. 24SF003686A)

Defendant Bryan Calderon Vences appeals from a judgment entered after conviction by plea of no contest to felony unlawful sexual intercourse with a minor.  The trial court sentenced defendant to the aggravated term of three years in state prison and ordered him to pay various fines and fees and to reimburse the Menlo Park Police Department $700 for the cost of a Sexual Assault Response Team (SART) examination of the victim.

Defendant's court-appointed counsel filed a brief raising no issues and asking this court to independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  After examining the entire record, we requested and received supplemental briefing relating to defendant's ability to pay the fines, fees, and SART examination costs.  We conclude defendant must be afforded the opportunity to assert an excessive fines objection in the trial court in light of *People v. Kopp* (2025) 19 Cal.5th 1 (*Kopp*), which was decided during the pendency of this appeal.  We further conclude the trial

1

court erred in ordering defendant to pay ancillary costs and to reimburse the police department for the SART examination costs without considering his ability to pay and while the amount of victim reimbursement had yet to be determined.  Accordingly, we reverse the judgment and remand for further proceedings consistent with this opinion.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. The Charges**

Following a preliminary hearing in October 2024, the San Mateo County District Attorney charged defendant by information with the following nine felony counts:  rape by use of drugs (Pen. Code,[1] § 261, subd. (a)(3); count one); rape of an unconscious person (§ 261, subd. (a)(4); count two); unlawful sexual intercourse with a minor more than three years younger than the perpetrator (§ 261.5, subd. (c); count three); sexual penetration by a foreign object when the victim was prevented from resisting by intoxicating, anesthetic, or controlled substance (§ 289, subd. (e); count four); sexual penetration by a foreign object when the victim was unconscious of the nature of the act (§ 289, subd. (d); count five); sexual penetration by a foreign object when the other person was under the age of 18 (§ 289, subd. (h); count six); sodomy by anesthesia or controlled substance (§ 296, subd. (i); count seven); sodomy of an unconscious victim (§ 286, subd. (f); count eight); and sodomy of a person under the age of 18 (§ 286, subd. (b)(1); count nine).  These criminal acts were allegedly committed on a minor confidential victim (C.V.) on or about March 30, 2020.

The information included an enhancement for the following aggravating circumstances:  the crime involved great violence; defendant took advantage of a position of trust or confidence to commit the offense and/or the

---

[1]     Further unspecified statutory references are to the Penal Code.

manner in which the crime was carried out indicated planning, sophistication, or professionalism; and the victim was particularly vulnerable.  (§ 1170, subd. (b)(2).)

## B. Facts and Investigation

The relevant facts are derived from the preliminary hearing testimony. C.V. met defendant online.  She told him she was 14 years old.  On the evening of March 29, 2020, C.V. snuck out of her home and met defendant at the Menlo Park Inn.  C.V. indicated there were no other people in the hotel room where they met.  Once C.V. arrived, defendant offered her a Xanax, and she took it.  C.V. "probably took ten Xanax pills" throughout the evening.

C.V.'s friend, N.P., communicated with C.V. that night and the following morning.  Around 2:30 a.m., N.P. had a video call with C.V. and observed her to have bloodshot eyes and slurred speech.  Shortly thereafter, N.P. and another friend, A.J.M., called C.V. again but a male answered the phone.  The male said that C.V. had performed oral sex on him and "let him do whatever."  During the call, N.P. saw C.V. "laying on the bed passed out." N.P. used a tracking application to find the location of C.V.'s phone and contacted C.V.'s family.

On March 30, 2020, C.V.'s mother told police that her daughter had left home the previous night and that her phone was tracked to Menlo Park Inn. Menlo Park Police Officers went to the hotel and found C.V. in a hotel room with defendant.  C.V. was in the bathroom in a "partial state of undress," and the officers observed her to be intoxicated or under the influence of a controlled substance.  Defendant told the officers that he had some friends in the room earlier with C.V. and that they had given alcohol to her.  Defendant said his friends attempted to take advantage of C.V. but that he "put a stop to it."  Defendant believed C.V. was 15 years old.

3

The investigating officers arranged for a forensic nurse practitioner to conduct a SART examination of C.V. After defendant was arrested, police obtained a DNA reference sample from him. For purposes of the preliminary hearing, it was stipulated that based on a forensic analysis of C.V.'s sexual assault kit and defendant's DNA reference sample, defendant was found to be a contributor of DNA on each of three samples in the sexual assault kit, and the probability that an unrelated individual selected at random from the population would be included as a contributor to the deduced DNA profiles was less than one in 350 billion.

### C. Plea and Sentencing

In February 2025, defendant pleaded no contest to felony unlawful sexual intercourse with a minor (§ 261.5, subd. (c); count three) and admitted the enhancement allegation under section 1170, subdivision (b)(2). He also agreed to 10-year sex offender registration (tier one) under section 290.006. Upon questioning by the trial court, defendant confirmed he understood and signed the waiver of rights form. Defendant's counsel stated there was a factual basis for the plea and admission. The trial court found defendant guilty of count three and dismissed the balance of the information on the prosecution's motion.

At the sentencing hearing on May 1, 2025, the trial court sentenced defendant to the aggravated term of three years in state prison. The court ordered defendant to have no contact with C.V. and to pay a $300 restitution fine pursuant to section 1202.4, subdivision (b); a $300 parole revocation fine, stayed pursuant to section 1202.45 pending successful completion of parole; a $30 "criminal conviction fee"; and a $40 "court operations assessment fee."[2]

---

[2] The abstract of judgment more specifically identified the $30 fee as for a "Conviction Assessment . . . per [Government Code section] 70373." This

4

Defense counsel asked to "be heard as to fines and fees," arguing that "[u]nder *People v. Duenas*, I'd ask the Court to consider staying the fines and fees in this matter. [¶] Mr. Calderon Vences is an indigent client who was approved for court-appointed assistance. He will be serving a rather lengthy prison term and would have to rebuild his life right after. I'd ask the Court to consider staying the fines and fees in this matter accordingly." The court thanked counsel for the argument but denied the request. The court then asked the prosecutor whether there was anything else she wanted to put on the record, and she stated, "Just that restitution to the victim is—retains jurisdiction in the amount to be determined, and $700 to the Menlo Park PD for the SART Exam." The court responded, "All right. That'll be the order."

As relevant here, the minute order of the sentencing hearing states: "Defendant to pay restitution to victim(s) through CDCR as directed. Ordered as follows: in an amount to be determined to the victim; $700 to Menlo Park Police Department Duration . effective May 01, 2025." The abstract of judgment similarly provides that defendant is ordered to pay "Restitution—$700 to Menlo Park Police Department, TBD to Victim."

## DISCUSSION

Because defendant did not obtain a certificate of probable cause, our review is limited to issues occurring after entry of the plea that do not affect its validity. (*People v. Mendez* (1999) 19 Cal.4th 1084, 1096; § 1237.5; Cal. Rules of Court, rule 8.304(b)(3).)

---

statute mandates a $30 fee be imposed on every conviction for a criminal offense (with exceptions not relevant here) in order "[t]o ensure and maintain adequate funding for court facilities." (Gov. Code, § 70373, subd. (a)(1).) Penal Code section 1465.8, subdivision (a)(1), mandates the $40 fee be imposed on every conviction for a criminal offense (with exceptions not relevant here) "[t]o assist in funding court operations."

5

While this appeal was pending, our Supreme Court decided *Kopp*, *supra*, 19 Cal.5th 1, which held that (1) a defendant may challenge the imposition of a "punitive fine" (e.g., restitution fines under Penal Code section 1202.4) under the excessive fines provisions of the United States and California Constitutions; and (2) equal protection principles require a court, upon request, to consider a defendant's ability to pay before imposing "ancillary costs" (e.g., court facilities fees under Government Code section 70373 and court operations fees under section 1465.8). (*Kopp*, at pp. 23, 30–31.) In so holding, *Kopp* disapproved of *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) and other cases finding a due process requirement to hold an ability to pay hearing before imposing a punitive fine. (*Kopp*, at p. 23 & fn. 17.)

Because defendant did not have the benefit of *Kopp*'s specific reasoning at the time of his sentencing, we conclude he must be afforded the opportunity to assert an excessive fine objection and develop a factual record on the considerations relevant to that claim. (*Kopp*, *supra*, 19 Cal.5th at p. 23 [remanding to give defendant opportunity to assert excessive fines analysis and argue how facts of the case inform such inquiry].) "[T]he 'touchstone' " of this inquiry " 'is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.' " (*Ibid*.) Four considerations inform that inquiry: "(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay." (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.)

As for the $30 court operations fee and the $40 court facilities fee, *Kopp* held that "in light of the Legislature's provision of fee waivers to indigent

6

civil litigants, equal protection principles require a court, upon request, to consider a defendant's inability to pay" before imposing ancillary costs in criminal cases. (*Kopp*, *supra*, 19 Cal.5th at p. 31.) Here, the trial court erroneously denied defense counsel's request for an ability to pay hearing. Although some courts have found such error harmless where the record otherwise reflects the defendant's earning capacity (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1075–1077; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140), we decline to do so here, as the People do not contend the record is sufficient to make such a determination in this case. Furthermore, as discussed below, an ability to pay hearing is also required under section 1203.1h.

Section 1203.1h provides: "In addition to any other costs which a court is authorized to require a defendant to pay, upon conviction of any offense involving sexual assault or attempted sexual assault, including child sexual abuse, the court may require that the defendant pay, to the law enforcement agency, county, or local government agency incurring the cost, the cost of any medical examinations conducted on the victim for the collection and preservation of evidence. *If the court determines that the defendant has the ability to pay* all or part of the medical examination costs, the court may set the amount to be reimbursed and order the defendant to pay that sum to the law enforcement agency in the manner in which the court believes reasonable and compatible with the defendant's financial ability. In making a determination of whether a defendant has the ability to pay, the court *shall take into account* the amount of any fine imposed upon the defendant and any amount the defendant has been ordered to pay in restitution." (§ 1203.1h, subd. (b), italics added.)

7

As the above statutory language reflects, the trial court must make a determination of a defendant's ability to pay costs under section 1203.1h, and also take into account the amount of any fine and amount of restitution the defendant has been ordered to pay, *before* ordering the defendant to reimburse a law enforcement agency for the costs of a medical examination. The court failed to do so here. Indeed, the fact that direct victim restitution had yet to be determined meant that ordering reimbursement for SART examination costs was premature because the court could not yet take into account any amounts of direct restitution in evaluating defendant's ability to pay. Section 1203.1h, subdivision (b), makes clear that the court "shall" take such amounts into account before ordering reimbursement.

The People argue defendant forfeited any claim of error based on section 1203.1h by failing to object below. We disagree. Reasonably construed, defense counsel's argument under *Dueñas* was sufficient to preserve the issue of defendant's ability to pay as it related to the fines and fees, as well as the SART examination reimbursement costs.

Moreover, and in any event, the colloquy at the sentencing hearing was not sufficiently clear to conclude defense counsel forfeited a claim of error under section 1203.1h. After the trial court denied defendant's request for an ability to pay hearing, the court asked the prosecutor if there was anything else she wanted to put on record, and the prosecutor responded, "Just that restitution to the victim is—retains jurisdiction in the amount to be determined, and $700 to the Menlo Park PD for the SART Exam." Up until this point, there was no prior mention of the SART examination costs, and it is unclear from the prosecutor's remark whether she was simply informing the court that the issue of reimbursement, like the amount of direct victim restitution itself, remained to be determined, or whether she was making a

8

request for immediate reimbursement of the SART examination costs notwithstanding that direct victim restitution had yet to be determined (which would run counter to the mandatory sequence set forth in section 1203.1h, subdivision (b)).  The court did not seek clarification and simply responded, "All right.  That'll be the order."  On this record, in light of the prosecutor's and court's ambiguous remarks regarding reimbursement for the SART examination costs, applying forfeiture would be unwarranted.

Accordingly, we will reverse the judgment and remand to give defendant the opportunity to assert an excessive fine objection, and for a determination of defendant's ability to pay the ancillary costs under Government Code section 70373, subdivision (a)(1), and section 1465.8, subdivision (a)(1), and the $700 in SART examination costs, taking into account the amount of any fine imposed upon defendant and any amount he has been (or will be) ordered to pay in restitution.  (§ 1203.1h, subd. (b).)

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P. J.

_____
Petrou, J.

*People v. Calderon Vences* (A173404)

9